1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

RICHARD DUNMORE,

12

13                                    Plaintiff,

14

15

16

17                          v.

18   G.J. JANDA, et al.,

19                                    Defendants.

20

Civil No.    10-CV-717 DMS (BGS)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

[Doc. No. 34.]

21

22

23

## I.

### PROCEDURAL BACKGROUND

24          Plaintiff, Richard Dunmore ("Plaintiff"), a state prisoner proceeding *pro se*, filed this action

25   under 42 U.S.C. § 1983.  Plaintiff filed a First Amended Complaint ("FAC") on October 12, 2010.

26   (Doc. No. 25.).  Plaintiff alleges that Defendants deprived him of his Eighth Amendment right to be free

27   from cruel and unusual punishments.  Specifically, Plaintiff alleges Defendants were deliberately

28

1

indifferent to his medical needs, used excessive force, subjected him to tight restraints, and that the conditions of confinement constituted cruel and unusual punishment.  On November 29, 2010, Defendants T. Barajaz, Sgt. Ellis, J. Partida, Fregroso, T. Molina, A. Luck, and G.J. Janda (collectively "Defendants") filed a motion to dismiss the FAC for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).  (Doc. No. 34).  Defendants also moved to dismiss on the basis of qualified immunity.  (*Id.*)  On February 18, 2011, Plaintiff filed an opposition to Defendants' motion to dismiss the FAC ("Plaintiff's Opposition").  (Doc. No. 38.).  Pending before the Court is Defendant's 12(b)(6) motion to dismiss for failure to state a claim.

## II.

### PLAINTIFF'S FACTUAL ALLEGATIONS

At all relevant times, Plaintiff was incarcerated at Calipatria State Prison.  (FAC at 1.).  In his FAC, the Plaintiff alleges the following supporting facts:

On or about April 13, 2008 at 10:00 a.m., a correctional officer sprayed Plaintiff's unclothed body with pepper spray after Plaintiff refused to open his mouth during a full-body search.  (*Id.* at 3.) Plaintiff acknowledges that this initial use of force was justified.  (*Id.* at 19.)

Three to five minutes later, Defendant Partida ("Partida") escorted Plaintiff  to a holding cell in the prisons' Facility-A satellite clinic.  (*Id.* at 3-4.)  The holding cell was equipped with  a sink.  (*Id.*) While in the holding cell Plaintiff exclaimed that he was "burning up from head to toe" and requested that Partida provide him with a decontamination shower.  (*Id.* at 5.)  Partida told Plaintiff he would look for some clean underwear and suggested that, in the interim, Plaintiff use the sink to wash his face and eyes. (*Id.*)  Partida also said that after a nurse examined Plaintiff, Partida would "see about getting [him] into a shower to get cleaned-up."  (*Id.*)  Plaintiff contends the sink's water pressure was inadequate to remove the pepper spray from his face, eyes, and body.  (*Id.*)  Approximately fifteen minutes after

placing Plaintiff in the holding cell, Partida provided him with clean underwear.  (*Id*.)

Plaintiff states that during the initial 45 to 60 minutes in the holding cell his "eyes were burning and began swelling" and "his entire body was red and felt like it was on fire— including his private parts." (*Id*.)  He also "had difficulty breathing and was constantly coughing."  (*Id*.)  Plaintiff informed Partida numerous times that he was in extreme pain.  (*Id*.)

Approximately 90 minutes after arriving at the clinic Plaintiff was seen by Defendant Molina ("Molina"), a registered nurse.  (*Id*. at 6)  Plaintiff informed Molina that he was experiencing significant pain and requested decontamination.  (*Id*.)  Molina suggested he utilize a small vent at the top of the holding cell "to try and see if [he] could get some air."  (*Id*.)  Plaintiff informed Molina that the vent did not provide any relief, that he had been in pain for over an hour, and that "Partida promised me a shower after I saw the nurse."  (*Id*. at 7.)  Aside from a brief conversation with Partida in Spanish, Molina left without further interaction.  (*Id*.)  Plaintiff claims that although he disclosed the extent of pain he was in, Molina falsified the CDCR 7219 Medical Report by writing "no comment" in the space reserved for comments made by the injured individual.  (*Id*.)  Molina also falsified the medical report by indicating Plaintiff was decontaminated, that there were no visual after-effects stemming from exposure to pepper spray, and that Plaintiff's body was free of pepper spray residue.  (*Id*.)  In total, Plaintiff' interaction with Molina lasted a five minutes.  (*Id*.)

Partida continued to witness Plaintiff's obvious pain over the next 90 minutes but repeatedly ignored requests for decontamination.  (*Id*.)  Approximately three hours after Plaintiff arrived at the clinic, Defendant Fregoso ("Fregoso") arrived and performed a full body search of Plaintiff.  (*Id*.)  After the search Plaintiff told Fregoso that he was in extreme pain because he had been pepper-sprayed and not yet decontaminated.  Fregoso replied, "stop talking, that's not my problem."  (*Id*. at 7-8.)  Fregoso placed Plaintiff in restraints, used duct tape to seal Plaintiff's underwear to his body, and transported

him to a cell in the Administrative Segregation Unit ("ASU").  (*Id.* at 8.)  Plaintiff was placed in "Contraband Watch room CW-002."  (*Id.*)  The holding cell's only amenity was a wooden bench.  (*Id.*)  Notably, the cell lacked a sink, toilet, or ventilation duct.

Once Plaintiff was in CW-002, Fregoso removed the duct tape, underwear, and restraints.  (*Id.* at 8.). He gave Plaintiff two t-shirts and two jumpsuits, and directed Plaintiff to dress himself, first in the t-shirts and followed by the jumpsuits so that he was essentially in a straight-jacket.  (*Id.*)  Duct-tape was wrapped around Plaintiff's waist and ankles—effectively sealing the bottom of the jumpsuit.  (*Id.*)  Plaintiff was also placed in wrist, ankle, and waist restraints.  (*Id.*)  The restraints were augmented with padlocks that shortened the distance between Plaintiff's ankles to "no more than three inches" and the distance between his wrists and sides to "mere millimeters."  (*Id.*)  Plaintiff was ordered to complete three bowel movements in order for him to be eligible for release from contraband watch.  (*Id.* at 9.)

In addition, several unnamed "Doe" defendants were posted outside Plaintiff's cell from the evening of April 13, 2008, until the morning of April 15, 2008.  (*Id.* at 10-12.)  Plaintiff had difficulty sleeping, was denied adequate water, and was bothered by the tight restraints.  (*Id.*)  Despite continually complaining of pain, Plaintiff was not given a decontamination shower during this entire time period. (*Id.*)

On the morning of April 15, Defendant Barajaz ("Barajaz") was stationed outside of Plaintiff's cell at 6:00 a.m. (*Id.* at 12.)   Barajaz asked whether Plaintiff wanted breakfast, but after receiving no response he took Plaintiff to a nurse for examination.  (*Id.* at 12-13.)  The nurse took Plaintiff's blood pressure and looked at his eyes.  (*Id.*)  After the examination Plaintiff was returned to his cell.  (*Id.* at 13.)  About two hours later, Barajaz escorted Plaintiff to the prison's Central Infirmary.  (*Id.*)  This time Plaintiff was examined by nurse Auger ("Auger").  (*Id.*)  Auger asked why Plaintiff's eyes were "so red."  (*Id.*)  Plaintiff explained that he "had been pepper sprayed and never decontaminated."  (*Id.*)  Plaintiff also told her that he did not sleep because of the pain.  (*Id.*)  Auger asked Barajaz if she could

decontaminate Plaintiff.  (*Id.*)  Barajaz told Auger that "it would be better to just let [the pepper spray] take its course and wear off on its own."  (*Id.*)  Barajaz did, however, permit Auger to rinse Plaintiff's eyes with some optical solution.  (*Id.*)

Hours later, during dinner, Barajaz provided Plaintiff with enough water to "quench his thirst." (*Id.* at 14.)  This was only the second time Plaintiff received water since being placed in ASU.  (*Id.*) Later, Plaintiff asked Barajaz to loosen the restraints.  (*Id.*)  Barajaz refused, telling Plaintiff " that's not going to happen until you finish your three bowel movements."  (*Id.*)  After completing his first bowel movement, Plaintiff asked to wash his hands.  (*Id.*)  Barajaz refused the request and mocked Plaintiff, saying: "if you want me to spit on your hands."  (*Id.*)

At 10:00 p.m. Barajaz was relieved of his post.  (*Id.*)  Several unnamed defendants were stationed outside Plaintiff's cell from April 16, 2008 at 10:00 p.m. until April 18 at 2:00 p.m.  All unnamed defendants refused to loosen Plaintiff's restraints.  (*Id.*)

On April 18, 2008 at about 2:00 p.m. Defendant Luck ("Luck") began his shift.  (*Id.* at 16.) Plaintiff immediately told Luck that he was prepared to provide his third and final bowel movement. (*Id.*)  Luck walked away without comment.  (*Id.*)  When Luck returned 45 minutes later Plaintiff reminded him that he was ready to deliver his final bowel movement.  (*Id.*)  Luck replied, "hold it for a while—I just came on—I need this overtime."  (*Id.*)  Luck finally provided Plaintiff with a receptacle at 8:30 p.m.  (*Id.* at 17.)  At this time Luck informed Defendant Sergeant Ellis ("Ellis") that Plaintiff completed his final bowel movement.  (*Id.*)  Luck and Ellis told Plaintiff that they could not release him from contraband watch because a statewide lock-down was beginning.  (*Id.*)  Plaintiff requested that, since he successfully completed contraband watch, at a minimum Luck and Ellis should remove the restraints. (*Id.*)  Both Luck and Ellis stated they could not comply with his request.  (*Id.*)  Although Plaintiff completed the three required bowel movements he was not released from the restraints for another 24 hours.

Finally, on April 19, 2008 at 8:30 p.m., Plaintiff was released from contraband watch. (*Id.*)

### III.

#### DEFENDANT'S MOTION TO DISMISS

Defendants argue that this Court should dismiss the FAC in its entirety for failing to state a claim pursuant to Rule 12(b)(6). In the alternative, Defendants argue that as prison officials they are entitled to qualified immunity.

#### A.  Fed.R.Civ.P. 12(b)(6) Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A Rule 12(b)(6) dismissal may be based on either a " 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 556, 570).

While allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), the court need not accept as true generic legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion

6

couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 1949. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*; *Twombly*, 550 U.S. at 570 (when a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed.").

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears pro se in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).  "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

///

**B. 42 U.S.C § 1983 Standard**

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149 (1978).

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishments.  (FAC at 17.)  Specifically, Plaintiff claims that Defendants violated his Eighth Amendment right by: (1) failing to provide him with adequate medical care, (2) using excessive force, (3) keeping him in tight restraints, and (4) subjecting him to conditions of confinement constituting cruel and unusual punishment.

**C.  Eighth Amendment Deliberate Indifference to Medical Need**

Defendants seek dismissal on grounds that Plaintiff failed to plead facts to show the deliberate indifference required to support an Eighth Amendment violation.  (*See* Def's. P&As, Doc. No. 34-1 at 10.)

**1.     Standard of Review**

Prison officials violate the Eighth Amendment if they act with deliberate indifference to a prisoner's serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  A plaintiff alleging such a violation must satisfy a two-part test containing both an objective and a subjective component.  *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted).  The plaintiff must prove that prison officials (1) deprived him of the "minimal civilized measure of life's necessities;" and (2) acted with deliberate indifference by denying, delaying or intentionally interfering with medical treatment. *Id.*; *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  "An Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the

official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

"A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1060 (citing Estelle, 429 U.S. at 104); *see also Clement v. Gomez*, 298 F.3d 898, 904 (2002). To demonstrate that the defendant's response to an established medical need was deliberately indifferent requires: (1) a purposeful act or failure to respond to an inmate's pain or possible medical need and (2) harm caused by the indifference." *Jett,* 439 F.3d at 1096. Where a prisoner alleges delay in receiving medical treatment, he must show that the delay led to further harm. *McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Plaintiff, however, need not demonstrate that the harm incurred was substantial. *Jett,* 439 F.3d at 1096.

### 2.    Application to Plaintiff's Complaint

<u>Defendants Partida, Molina, Fregroso, and Barajaz</u>

Plaintiff generally alleges that the combination of the pepper spray and Defendants Partida, Molina, Fregroso and Barajaz's failure to provide him with a decontamination shower caused "the existence of chronic and substantial pain that lasted from 4-13-08 until 4-16–08. . . . " (FAC at 18.). Plaintiff further states that the severity of his pain interfered with his ability to eat, sleep, and otherwise function in a normal manner. (*Id.* at 10-12.). Plaintiff experienced continuous pain as a result of the pepper spray and made his extreme discomfort clear throughout his time on contraband watch. This pain could have been alleviated by decontaminating Plaintiff. Accordingly, the failure to decontaminate Plaintiff resulted in the unnecessary and wanton infliction of pain. Assuming the veracity of the allegations, this Court finds that Plaintiff asserts facts sufficient to establish a "serious medical need." *See Clement*, 298 F.3d at 904.

Next, the Court must determine whether Plaintiff alleges facts sufficient to support the inference that each defendant deliberately failed to respond to his "pain or possible medical need." *Jett,* 439 F.3d at 1096. Plaintiff contends that Defendants Partida, Molina, Fregroso, and Barajaz denied him adequate medical care

because after learning that Plaintiff was in extreme pain, they failed to ensure that he received treatment. (FAC at 18.) Defendants argue that Plaintiff's allegations do not show any deliberate indifference.

With respect to Partida, Plaintiff alleges that he repeatedly informed Partida of the extreme pain he was experiencing. (FAC at 5.) Despite knowing Plaintiff was in pain and needed decontamination, Partida refused to ensure that he received a shower or any other form of relief that would lessen the pain. Partida was with Plaintiff for approximately three hours and did not provide him with the appropriate medical treatment. Plaintiff claims that because Partida did not decontaminate him or ask Molina to decontaminate him, he experience continuing and unnecessary pain. The facts as alleged plausibly suggest an inference of deliberate indifference on Partida's part.

Not only did Molina not provide Plaintiff with a decontamination shower, she falsified the CDCR 7219 Medical Report. (FAC at 7.) Although Plaintiff complained to her about the pain, his difficulty breathing, and burning in his throat, Molina did not memorialize his complaints on the medical report. (*Id.* at 6.) Molina also falsified the report by indicating that Plaintiff received a decontamination shower and was not suffering any negative effects as a result of the pepper spray. (*Id*. at 7.) Taken as true, these facts are sufficient to suggest that Molina either failed to respond to Plaintiff's pain and medical needs or deliberately interfered with Plaintiff's medical care by falsifying the Medical Report. As a result of Molina's actions and inactions, Plaintiff experienced continuing pain. Thus, the facts suggest an inference that Molina acted with deliberate indifference.

Similarly, Fregoso was informed that Plaintiff was in "extreme pain." (*Id.* at 8.) Given that Fregoso callously directed Plaintiff to "stop talking," he did not respond to Plaintiff's needs. (*Id.*) His failure to respond was purposeful. It appears that Fregoso's decision to dress Plaintiff in a straight-jacket fashioned from prison jumpsuits and to seal the jumpsuits with duct tape before ensuring that Plaintiff was decontaminated exacerbated the pain. Because Plaintiff continued to experience pain throughout the night, Fregoso's denial of treatment caused harm. Thus, because at this stage in the proceedings the facts as

10

alleged are taken as true, the Court finds Plaintiff's allegations sufficient to state a claim that Fregoso was deliberately indifferent to Plaintiff's medical need.

Lastly, Plaintiff alleges Barajaz intentionally interfered with his medical treatment by telling Auger that it was not necessary to fully decontaminate Plaintiff. (*Id*. at 13.)  Instead, Barajaz suggested that the nurse let the pepper spray take its course.  At this point, however, Plaintiff does not state that he continued to complain to Barajaz or Auger about pain or request a decontamination shower.  In fact, Barajaz initiated Plaintiff's visit to the nurse.  Ensuring that Plaintiff visited the nurse does not support a determination that Barajaz failed to respond to Plaintiff's pain and possible medical need.  Based on Plaintiff's statement of facts, it appears that the nurse was primarily concerned about Plaintiff's red eyes.  Barajaz allowed the nurse to rinse Plaintiff's eyes with optical solution which likely alleviated any remaining eye pain.  In addition, Plaintiff does not claim that after his visit to the infirmary he asked Barajz to decontaminate him. Consequently, the facts as alleged do not indicate that Barajaz acted with deliberate indifference to Plaintiff's medical need.

Accordingly, the motion to dismiss Plaintiff's claims that Defendants acted with deliberate indifference to a serious medical need be **DENIED** as it relates to Defendants **PARTIDA, MOLINA, and FREGOSO.**  Plaintiff, however, fails to state a plausible claim for relief against **BARAJAZ**, thus the Court **GRANTS** his motion to dismiss with leave to amend.  *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

<u>Defendant Janda</u>

Under §1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior.  *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir.1984).  Nonetheless, a supervisor may be liable under § 1983 upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the

supervisor's wrongful conduct and the constitutional violation. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc) (citation omitted).

Generally, a supervisor "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Starr v. Baca*, 633 F.3d 1191, 1196 (9th Cir. 2011) (holding that *Iqbal* did not change case law on deliberate indifference claims against supervisors in conditions of confinement cases and therefore, "a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others"). This includes evidence that a supervisor implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman*, 942 F.2d at 1446; *see also Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Plaintiff does not allege facts specifically inculpating Warden Janda ("Janda"). Rather, Plaintiff argues that the facts demonstrate a custom and practice created under Janda's supervision such that the other defendants acted pursuant to Janda's policy. (Pl.'s Opp'n , Doc. No. 38 at 15.) Plaintiff's claim contends that Janda did not institute a written decontamination policy and that the lack of a concrete policy led to the constitutional violation. Put another way, Plaintiff argues that the lack of a protocol requiring inmate decontamination after pepper spray exposure caused Plaintiff to experience unnecessary pain and discomfort. But Plaintiff's facts as alleged in the FAC do not support a determination that Janda's policy was "so deficient that the policy itself is a repudiation of constitutional rights. . . ." *Redman*, 942 F.2d at 1446.

Plaintiff's FAC states that he "has personally seen officers take pepper sprayed inmates to either the shower stall located on the Facility-A yard or the hose located next to the gymnasium." (FAC at 6.) Plaintiff's own complaint suggests that the prison does not have a decontamination policy where a shower is always refused. Similarly, the facts alleged do not suggest that the lack of a formal decontamination

policy is so deficient such that prisoners are repeatedly refused decontamination showers so as to indicate that the lack of a written policy is responsible for Plaintiff's harm

The Court finds that Plaintiff has not alleged facts to support a supervisory liability claim against Janda for the alleged constitutional violations of his subordinates. Even construing the pleadings liberally, Plaintiff's FAC is devoid of any factual allegations against Janda. Nor has Plaintiff alleged facts supporting that Janda implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and was the moving force of the violations alleged in the FAC.

Accordingly, the Court finds that Plaintiff fails to state a plausible claim for relief against **JANDA** and **GRANTS** the motion to dismiss with leave to amend. *Noll*, 809 F.2d at 1448.

### D. Eighth Amendment Excessive Force

Defendants seek dismissal on grounds that Plaintiff failed to plead facts to show the Defendants used excessive force when they did not immediately contaminate him. (*See* Def's. P&As, Doc. No. 34-1 at 10.)

### 1. Standard of Review

When an inmate claims that officials used excessive force, in order to make out an Eighth Amendment claim, the prisoner must demonstrate that officials applied force "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). A prisoner, like Plaintiff, asserting malicious and sadistic use of force need not show that such force caused an "extreme deprivation" or "serious" or "significant" pain or injury to establish a cause of action. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). All that is necessary is proof of more than *de minimis* pain or injury. *Id.* at 9.

Thus, the objective component of an excessive force claim is less demanding than that necessary for conditions-of-confinement or inadequate medical care claims. The Supreme Court directs courts to balance several factors in determining whether prison officials acted maliciously and sadistically. The factors originally set out in *Whitley*, include: (1) the need for application of force, (2) the relationship

10-cv-717 DMS (BGS)

between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7. (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id*.

### 2. Application to Plaintiff's Complaint

Plaintiff concedes that the initial use of pepper spray was justified given the threat his conduct posed to officer safety. (*Id.* 19.). Plaintiff, however, argues that once he was subdued, Defendants' collective failure to decontaminate him over the course of several days amounts to an unconstitutional "continuation and aggravation of the initial force after the need for further force had ended." (FAC at 19.) Specifically, Plaintiff alleges that Defendants, Partida, Molina, Fregroso, and Barajaz were aware of the pain which results from the lasting effects of pepper spray, and acted maliciously and sadistically for the very purpose of causing harm by not ensuring that he was decontaminated.

This is a creative means to assert an excessive force claim, however, the facts do not show that Defendants Partida, Molina, Fregroso, and Barajaz applied any physical force after the pepper spray was administered. Because Plaintiff's complaints against these prison officials are based on their refusal to lessen or eliminate the effects of the already applied force, his claims against these defendants fall under the Eighth Amendment's protection against the denial of medical care. *See Clement*, 298 F.3d 898 at 904.

Accordingly, Plaintiff has not offered facts that demonstrate Defendants **PARTIDA, MOLINA, FREGOSO** and **BARAJAZ** applied force maliciously and sadistically for the very purpose of causing harm. The Court **GRANTS** the motion to dismiss the claim for excessive force without leave to amend because the deficiencies could not be cured by the allegation of other facts.

///

14

### E.  Eighth Amendment Tight Restraints

Defendants seek dismissal on grounds that Plaintiff failed to plead facts to show the Defendants kept him in restraints for the purpose of causing harm.  (*See* Def's. P&As, Doc. No. 34-1 at 14.)

#### 1.  Standard of Review

Assuming that in-cell restraints are painful, or "make it difficult for an inmate to sleep, eat, drink water, or stay warm. . ." the objective component under the Eighth Amendment is met.  *La Maire v. Maass*, 12 F.3d 1444, 1451-52 (9th Cir. 1993).  The subjective intent required for an unconstitutional use of disciplinary restraints is wantonness.  *La Maire v. Maass*, 12 F.3d 1444, 1451-52 (9th Cir. 1993).  To state a claim for relief a plaintiff must show cruel conduct causing discomfort beyond that inherent from immobilization or movement in restraints.  *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996).

#### 2.  Application to Plaintiff's Complaint

Plaintiff states that after dinner on April 15, 2008, he asked Barajaz to loosen the restraints. Barajaz refused.  Plaintiff, however, never mentions that he complained to Barajaz that the restraints were causing him pain.  Plaintiff has not provided facts to show that Barajaz himself was wanton or even deliberately indifferent regarding the continued use of restraints.

Plaintiff's complaint, as it relates to Luck and Ellis, stems from their refusal to remove his restraints after he completed his third bowel movement.  He, however, does not allege that he informed either Luck or Ellis that the restraints were causing him pain.  Plaintiff's recitation of the facts indicates that Luck and Ellis kept Plaintiff on contraband watch due to the lock down.  Thus, it is not clear that the continued use of restraints was unnecessary under the circumstances.  The facts as presented do not show that Luck and Ellis did not immediately remove the restraints out of a desire or intent to punish. Likewise, the facts asserted do not indicate that being subjected to restraints for an additional 24 hours caused Plaintiff excessive pain or deprived him of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Accordingly, the motion to dismiss based on Defendants **BARAJAZ**, **LUCK** and **ELLIS'S** failure to loosen or remove Plaintiff's restraints is **GRANTED** with leave to amend.

### F.  Eighth Amendment Conditions of Confinement

Defendants seek dismissal on grounds that Plaintiff failed to plead facts to show Warden Janda "personally acted to deprive him of drinking water or other of life's necessities."  (*See* Def's. P&As, Doc. No. 34-1 at 16.)

#### 1.  Standard of Review

An Eighth Amendment claim challenging the conditions of confinement must sufficiently allege a denial of the "minimal civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347, occurring through "deliberate indifference" by prison personnel or officers. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (citations omitted).  Put differently, the prisoner must establish that the deprivation was sufficiently serious to be cruel and unusual, and that prison officials acted in a manner indicating that the condition of confinement was implemented with an intent to punish.  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242; *see also Wilson*, 501 U.S. at 298. "[C]onditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise. . . ." *Wilson*, 501 U.S. at 305.  "Conditions must not involve the wanton and unnecessary infliction of pain. . . ." but ". . .to the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

#### 2.  Application to Plaintiff's Complaint

Plaintiff alleges his rights under the Eight Amendment were violated because he was confined to a cell lacking running water and adequate ventilation, as well as was refused soap.  (FAC at 21.)  But "[i]nadequate ventilation and air flow violates the Eighth Amendment [only] if it undermines the health

16

of inmates and the sanitation of the penitentiary." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir.1996). Plaintiff's facts do not allege that the inadequate ventilation in the holding cell undermined his health or affected the sanitation of the prison.  The fact that Plaintiff was denied the ability to wash his hands after going to the restroom may be insensitive, but Plaintiff has not alleged facts that prison officials denied him soap despite being aware of and disregarding an excessive risk to inmate health.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1970).

Plaintiff alleges that because Janda is the warden, he is responsible for the custody, care, and treatment of all inmates under his control.  (FAC at 20.)  Plaintiff claims that Janda effectively denied him the basis necessities of life by permitting Plaintiff to be confined to a cell lacking running water to drink, soap to wash his hands, and adequate ventilation.  (FAC at 21.)  The facts, however, do not indicate that Plaintiff was denied the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347.

As stated above,  Plaintiff's facts do not allege that the inadequate ventilation in the holding cell undermined his health or affected the sanitation of the prison.  The facts also do not support an inference that the being denied access to soap or disinfectant over the course of three bowel movements violates the fundamental requisites of sound personal hygiene.  *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1411 (N.D. Cal. 1984), overruled on other grounds, 801 F.2d 1080 (9th Cir. 1986). Plaintiff does not state that his health was endangered because he was denied soap.  Finally, the fact that Plaintiff did not have access to running water so that he could drink at his pleasure also does not indicate that the conditions in the contraband watch cell violates the Eighth Amendment.  Plaintiff did receive water, and though he may has desired more drinking water, the facts do not indicate that Janda was aware of this need.

In sum, the facts as alleged do not support a finding that Janda knowingly and unreasonably disregarded an objectively intolerable risk of harm stemming from the conditions in the cell.  Nor do the

17

facts alleged support an inference that Janda implemented a policy so deficient that the policy itself is a repudiation of constitutional rights.

Accordingly, the motion to dismiss Plaintiff's claims that Janda acted with deliberate indifference to the conditions of his confinement is **GRANTED** with leave to amend.  *Noll,* F.2d 1446 at1448.

### G.  Qualified Immunity

Defendants further assert they are entitled to dismissal based on qualified immunity.  (Defs.' P&As, Doc. No. 34-1 at 16.)

#### 1.  Standard of Review

Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

#### 2.  Application to Plaintiff's Complaint

Because the Court has found Plaintiff's Amended Complaint alleges facts sufficient to state an Eighth Amendment claim against Defendants Partida, Fregoso, and Molina, it next considers whether Plaintiff's claims must nevertheless be dismissed as to Defendants Partida, Fregoso and Molina on the basis of qualified immunity.

18

As discussed above, the Court finds that Plaintiff has set forth allegations of deliberate indifference to his serious medical needs sufficient to state an Eighth Amendment claim against Defendants Partida, Fregoso and Molina. *See Jeffers*, 267 F.3d at 907; *Saucier,* 533 U.S. at 201; *Estelle*, 429 U.S. at 104-05.  Based on the same facts, the Court also finds that Plaintiff has set forth allegations that Defendants Partida and Fregoso acted with deliberate indifference to Plaintiff's conditions of confinement.  Accordingly, the Court next asks whether these Defendants are nevertheless immune to suit, i.e., whether the contours of Plaintiff's rights under the Eighth Amendment were sufficiently clear such that a reasonable prison official in Defendants position would have understood that refusing Plaintiff a decontamination shower under the circumstances alleged violated that right. *See Saucier*, 533 U.S. at 202.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *id.* at 202, or "whether the state of the law [at the time of the challenged action] gave 'fair warning' to the officials that their conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (*quoting Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

*Estelle* clearly establishes the general rule that prison officials cannot intentionally deny or delay access to medical care without violating the Eighth Amendment's ban on cruel and unusual punishments. *Estelle*, 429 U.S. at 104-05.   And in *Clement*, the court held that summary judgment was properly denied where it was possible that prison officials were aware of the harmful effects of pepper spray and the inadequacy of measures to reduce those effects and "yet purposefully refused to provide showers, medical care, or combative instructions, or to develop an adequate policy to address obvious risks.  *Clement*, 298 F.3d at 904.

Moreover, "[p]recedent directly on point is not necessary to demonstrate that a right is clearly

established." *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001).  Rather, if "the unlawfulness [is] apparent in light of preexisting law," then the standard is met. *Id*. at 254.  In addition, even if there is no closely analogous case law, a right can be clearly established on the basis of "common sense." *DeBoer v. Pennington*, 206 F.3d 857, 865 (9th Cir.2000), petition for cert. filed, (U.S. Aug. 7, 2000) (No. 00-222).

Thus, while the Court notes "a resolution of the factual issues may well relieve the prison officials of any liability in this case," *Clement*, 298 F.3d at 906, *Saucier* instructs the Court at this stage of the proceedings to presume the Plaintiff's version of events as true. *Saucier*, 533 U.S. at 201. Here, Plaintiff claims Defendants Partida, Fregoso and Molina all knew about, but deliberately ignored Plaintiff's numerous complaints of significant pain following being pepper sprayed.  Assuming this is true, the Court finds both that Plaintiff has sufficiently alleged a violation of the Eighth Amendment and that it would be clear to any reasonable prison official in Defendants' position that to deny Plaintiff a decontamination shower under the circumstances would violate clearly established law. *Saucier*, 533 U.S. at 202; *Estelle*, 429 U.S. at 104-05;

For these reasons, Defendant Partida, Fregoso and Molina's Motion to Dismiss Plaintiff's Eighth Amendment claims on qualified immunity grounds is **DENIED**.

## IV.

### CONCLUSION

For all of the reasons stated above, IT IS HEREBY ORDERED:

1. Defendants' motion to dismiss Plaintiff's claim for deliberate indifference to his medical needs is **GRANTED IN PART**.  Plaintiff's claims against Barajaz and Janda are **DISMISSED** with leave to amend;

2. Defendants' motion to dismiss the excessive force claim is **GRANTED without leave to amend**;

3.      Defendants' motion to dismiss the claim relating to tight restraints is **GRANTED** with leave to amend;

4.      Defendants' motion to dismiss the conditions of confinements claim **GRANTED** with leave to amend;

5.      Defendants' motion to dismiss on the ground of qualified immunity as it relates to Partida, Fregoso, and Molina is **DENIED.**

Plaintiff is GRANTED thirty (30) days leave from the date this Order is "Filed" in which to file a Second Amended Complaint which cures all the deficiencies of pleading noted above. Plaintiff's Amended Complaint must be complete in itself without reference to the superseded pleading. *See* S.D. Cal. Civ. L. R. 15.1. Defendants not named and all claims not realleged in the Second Amended Complaint will be deemed to have been waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Further, if Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted, it may be dismissed without further leave to amend. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

DATED:  September 26, 2011

_____

HON. DANA M. SABRAW
United States District Judge